FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 03, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SAMUEL PAUL L.,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

No.  2:18-CV-00358-RHW

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 9, 10. Plaintiff brings this action seeking judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner of Social Security's final decision, which denied his application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 401-434, and his application for Supplemental Security Income under Title XVI of the Act, 42 U.S.C. §1381-1383F. *See* Administrative Record (AR) at 1-4, 18-34. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 1

below, the Court **GRANTS** Defendant's Motion for Summary Judgment and

**DENIES** Plaintiff's Motion for Summary Judgment.

## I.    Jurisdiction

Plaintiff filed his applications for Disability Insurance Benefits and Supplemental Security Income on June 25, 2015. *See* AR 21, 578, 579-597. In both applications, he alleged disability beginning on June 1, 2013.[1] AR 581, 592. Plaintiff's applications were initially denied on March 15, 2016, *see* AR 470-73, and on reconsideration on June 30, 2016. *See* AR 476-481. Plaintiff then filed a request for a hearing on July 11, 2016. AR 483-84.

A hearing with Administrative Law Judge ("ALJ") R.J. Payne occurred on June 30, 2017. AR 355, 357. On August 9, 2017, the ALJ issued a decision concluding that Plaintiff was not disabled as defined in the Act and was therefore ineligible for disability benefits or supplemental security income. AR 18-34. On September 21, 2018, the Appeals Council denied Plaintiff's request for review, AR 1-4, thus making the ALJ's ruling the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. On November 18, 2018, Plaintiff timely filed the present action challenging the denial of benefits. ECF No. 1. Accordingly, Plaintiff's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

---

[1] However, for claims under Title XVI, the month after the application's filing date is the earliest that SSI benefits are payable. *See* 20 C.F.R. § 416.335.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2**

## II. Five-Step Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are so severe that the claimant is not only unable to do his or her previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572, 416.972. If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571, 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09, 416.908-09. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether one of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.    Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under this section is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Even if the evidence in the record is susceptible to more than one rational interpretation, if inferences reasonably drawn from the record support the ALJ's decision, then the

court must uphold that decision. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954-59 (9th Cir. 2002).

## IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here. Plaintiff was 43 years old on the alleged date of onset, which the regulations define as a younger person. AR 32, 410; *see* 20 C.F.R. §§ 404.1563(c), 416.963(c). He graduated from college with a bachelor's degree in psychology and communications. AR 397, 1188. He can communicate in English. AR 622. He has a history of alcohol and marijuana abuse. AR 24, 359-361, 1085. He has past relevant work as a human resources manager for Motorola, Patton Electronics, Amazon, and another technology company. AR 32, 624, 637-41.

## V.    The ALJ's Findings

The ALJ determined that Plaintiff was not disabled as it is defined in the Act at any time from June 1, 2013 (the alleged onset date) through August 9, 2017 (the date the ALJ issued his decision). AR 22, 34.

**At step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date (citing 20 C.F.R. §§ 404.1520(b), 404.1571 *et seq.*, 416.920(b), 416.971 *et seq.*). AR 24.

**At step two**, the ALJ found Plaintiff had the following severe impairments: alcohol dependence, cannabis abuse, and general anxiety disorder (citing 20 C.F.R.

§§ 404.1520(c), 416.920(c)). AR 24. The ALJ also found that even if Plaintiff stopped his substance use, he would still have the severe impairment of anxiety disorder. AR 25.

**At step three**, the ALJ found that Plaintiff's impairments, including the substance use disorders, met the severity of Listing 12.06 of 20 C.F.R. § 404, Subpt. P, Appendix 1 (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)). AR 24-25. The ALJ found that Paragraph A's criteria were satisfied because Plaintiff's anxiety disorder symptoms were characterized by restlessness, difficulty concentrating, and sleep disturbance. AR 24; *see* Listing 12.06(A)(1)(a), (c), (f). The ALJ further found that Paragraph B's criteria were satisfied because Plaintiff had a marked limitation in the following areas of mental functioning: interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself. AR 25; *see* Listing 12.06(B)(2), (3), (4).

However, the ALJ also found that if Plaintiff stopped his substance use, he would *not* have an impairment or combination of impairments that met or medically equaled the severity of Listing 12.06 or any other Listing. AR 25-26.

**At step four**, the ALJ found that if Plaintiff stopped his substance use, he would have the residual functional capacity to perform a full range of work at all exertional levels. AR 27. However, the ALJ found that Plaintiff had some non-exertional, psychological limitations. AR 27. With respect to Plaintiff's mental

abilities, the ALJ found that Plaintiff was able to understand, remember, and carry out simple, routine, and repetitive work instructions and work tasks. AR 27. Regarding contact with other people, the ALJ found that Plaintiff could have occasional contact with the general public and that he could work with or in the vicinity of coworkers but not in a teamwork-type setting. AR 27. The ALJ also found that Plaintiff could handle normal supervision but not over-the-shoulder or confrontational supervision. AR 27. With these psychological limitations in mind, the ALJ concluded that Plaintiff would do best in a routine work setting with little or no changes and that he could not perform fast-paced or strict production quota type work. AR 27.

Given these psychological limitations, the ALJ found that even if Plaintiff stopped his substance use, he would be unable to perform his past relevant work as a human resources manager because he was limited to simple, routine, and repetitive work instructions and work tasks. AR 32.

**At step five**, the ALJ found that if Plaintiff stopped his substance use, in light of his age, education, work experience, and residual functional capacity, there were a significant number of jobs in the national economy that he could still perform (citing 20 C.F.R. §§ 404.1560(c), 404.1566, 416.960(c), 416.966). AR 32-33. These included an industrial cleaner, a store laborer, and a mail clerk. AR 33.

///

## VI.     Issues for Review

Plaintiff argues that the ALJ: (1) improperly found that his substance abuse disorders were a contributing factor material to the determination of disability; (2) improperly weighed the medical opinion evidence; (3) improperly discredited his subjective pain complaint testimony; and (4) improperly found that there were a significant number of jobs in the national economy that he could still perform. *Id.* at 3-20.

## VII.     Discussion

### A.     Plaintiff's Substance Abuse Disorders and the ALJ's DAA Materiality Determination

Plaintiff argues that the ALJ improperly found that his substance abuse disorders were a contributing factor material to the determination of disability. ECF No. 9 at 3-7. Specifically, he argues that there was no medical evidence from an acceptable medical source establishing that he has a Substance Use Disorder. *Id.* at 4-5. He also appears to challenge the ALJ's finding that the conditions of depressive disorder and bipolar disorder are byproducts of his substance abuse, and that these conditions would no longer remain if he stopped using drugs or alcohol. *Id.* at 5-7.

A finding of "disabled" under the five-step evaluation process does not automatically qualify a person for benefits. Under provisions added by the Contract with America Advancement Act of 1996, an "individual shall not be

considered to be disabled for purposes of [benefits under Title II or XVI of the Act] if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); *see* Pub. L. No. 104-121, 110 Stat. 847.

When there is medical evidence of substance abuse in the record, the ALJ must, under certain circumstances, conduct a "drug addiction and alcoholism (DAA) materiality determination." *See* Social Security Ruling (SSR) 13-2p, 2013 WL 621536 at *4. The purpose of this is to determine whether the claimant would still be disabled if he or she stopped using drugs or alcohol. *Id.* The ALJ must conduct the DAA materiality determination only when: (1) the record contains "medical evidence from an acceptable medical source establishing that a claimant has a Substance Use Disorder," and (2) the ALJ finds "that the claimant is disabled considering all impairments, including the [substance abuse disorders]." *Id.* In determining whether a claimant has a Substance Use Disorder at this stage of the inquiry, an ALJ may not rely on non-medical evidence such as the claimant's self-reported drug/alcohol use or arrests for driving under the influence. *Id.* at 10. Rather, the ALJ must only rely on "objective medical evidence provided by an acceptable medical source." *Id.*

If these two requirements are met, then the ALJ conducts the DAA materiality determination. In doing so, the ALJ first determines which of the

claimant's disabling limitations would remain if he or she stopped using drugs or alcohol. 20 C.F.R. § 404.1535(b)(2). If the remaining limitations would still be disabling, then the claimant is disabled independent of his or her substance abuse and is therefore still eligible for benefits. 20 C.F.R. § 404.1535(b)(2)(ii). However, if the remaining limitations would not be disabling, then the claimant's substance abuse is material and the ALJ must deny benefits. 20 C.F.R. § 404.1535(b)(2)(i).

In performing this analysis, the ALJ is no longer limited to considering evidence from acceptable medical sources. *See* SSR 13-2p, 2013 WL 621536 at *11. Evidence from "other" sources—such as social workers, vocational rehabilitation specialists, family members, therapists, friends, or chemical dependency practitioners—can help the ALJ understand a claimant's functioning over time and also "document how well the claimant is performing activities of daily living in the presence of a comorbid impairment." *Id.*

The relationship between mental illness and substance abuse is complex and it is often difficult to determine whether someone's drug addiction or alcoholism is material to his or her disability. *Bufford v. Colvin*, 2016 WL 5373201, at *2 (N.D. Ill. 2016). Thus, in situations where a claimant has a co-occurring mental disorder that improves when he or she stops using drugs or alcohol, DAA materiality determinations must be particularly case-specific, fact-sensitive inquiries. This is because the Social Security Administration does "not know of any research data

that [it] can use to predict reliably that any given claimant's co-occurring mental disorder would improve, or the extent to which it would improve, if the claimant were to stop using drugs or alcohol." SSR 13-2p, 2013 WL 621536 at *9. Instead, in order to find that a claimant's drug use or alcoholism is material to his or her disability, the ALJ must rely on "evidence in the case record." *Id.*

In this case, the ALJ found that both requirements for a DAA materiality determination were present. *See* AR 24-32. In finding that an acceptable medical source established that Plaintiff had a Substance Use Disorder, the ALJ relied primarily on the testimony of medical expert Glenn Griffin, Ph.D. *See* AR 28-30. Dr. Griffin testified that Plaintiff's "primary medically determinable impairment during the adjudicative period is alcohol dependence." AR 359. In formulating this opinion, Dr. Griffin relied on, among other things, a diagnosis from treating psychiatrist David Bot, M.D. as well as observations from treating psychologist Dennis Dyck, Ph.D. AR 361-62, 369-70; *see* AR 1091 (Dr. Bot stating, "Diagnosis: Depression; alcohol"), 1105 (Dr. Bot stating, "EtOH: longstanding problem"), 1112 (Dr. Dyck stating, "Alcohol abuse and problem drinking, with at least one inpatient chemical dependency treatment."). In addition to finding that Plaintiff had a Substance Abuse Disorder, the ALJ also found that Plaintiff was disabled considering all impairments, including the substance abuse disorders, because his symptoms met the severity of Listing 12.06. AR 24-25. Because

Plaintiff met both conditions, the ALJ was required to conduct a DAA materiality determination. SSR 13-2p, 2013 WL 621536 at *4.

With respect to the first step of the DAA materiality determination, the ALJ found that if Plaintiff stopped using drugs and alcohol, his only remaining impairment would be general anxiety disorder. AR 25; *see* 20 C.F.R. § 404.1535(b)(2). The ALJ outlined the periods in which Plaintiff abstained from substance abuse and observed how his mental symptoms improved. *See* AR 25-27. The ALJ also cited Dr. Griffin's testimony that Plaintiff's alcohol dependence ruled out the diagnoses of major depressive disorder and bipolar disorder because these affective disorders were "an artifact of [his] alcohol consumption." AR 29; *see* AR 362. Dr. Griffin testified that the totality of Plaintiff's record—including his providers' opinions, his history of DUI, his binge drinking, and his inability to maintain housing in a treatment facility due to intoxication—contained "all of the elements . . . that would impact [his] capacity of emotional functioning." AR 375. However, the ALJ observed that "[e]ven after the substance abuse was stopped at times, [Plaintiff] continued to complain about anxiety." AR 25.

With respect to the second step of the DAA materiality determination, the ALJ found that Plaintiff's remaining impairment—anxiety disorder—would not be disabling and therefore that Plaintiff's substance abuse was material to the

determination of disability. AR 33; *see* 20 C.F.R. § 404.1535(b)(2)(i).

Accordingly, the ALJ concluded that Plaintiff was ineligible for benefits. AR 34.

Plaintiff first argues that the ALJ erred in conducting a DAA materiality determination in the first place because "there is no medical evidence from an acceptable medical source . . . establishing that [he] has a Substance Use Disorder." ECF No. 9 at 4. Plaintiff is incorrect—Dr. Griffin, an acceptable medical source, testified that Plaintiff's primary medically determinable impairment was alcohol dependence. AR 359, 1136 (Dr. Griffin's curriculum vitae, noting that he is a licensed clinical psychologist); 20 C.F.R § 404.1502(a)(2) (acceptable medical sources include licensed psychologists). Plaintiff also argues that Dr. Griffin "could not cite any place in the record where alcohol abuse was diagnosed by an acceptable medical source," ECF No. 9 at 5, but this is also incorrect—he cited diagnoses and observations from Plaintiff's treating psychiatrist and psychologist, Drs. Bot and Dyck. AR 361-62, 369-70; *see* AR 1091, 1105, 1112.

Plaintiff's next argument is somewhat unclear and difficult to follow. *See* ECF No. 9 at 5-7. As best the Court is able to discern, Plaintiff appears to challenge the ALJ's finding that the conditions of depressive disorder and bipolar disorder would no longer remain if he stopped using drugs and alcohol. *Id.* Plaintiff contends that in making this determination, the ALJ failed to rely on "evidence in

the case record" as SSR 13-2p requires (given that no research data can reliably support a bright-line rule in this context). *Id.* at 6. However, the ALJ outlined the periods in which Plaintiff abstained from substance abuse and observed how his mental symptoms improved. *See* AR 25-27. For example, during a period of relative sobriety, an examining psychologist opined that Plaintiff's depressive disorder was in "[p]atrial [r]emission." AR 1190. Moreover, the ALJ relied on Dr. Griffin testimony that Plaintiff's major depressive disorder and bipolar disorder were "an artifact of [his] alcohol consumption." AR 362. Dr. Griffin reviewed the totality of Plaintiff's record—including his providers' opinions, his history of DUI, his binge drinking, and his inability to maintain housing in a treatment facility due to intoxication—and opined that all this "would impact [Plaintiff's] capacity of emotional functioning." AR 375.

Plaintiff argues that Dr. Griffin impermissibly relied on factors such as his prior DUI and self-reported drinking. ECF No. 9 at 6. However, it is only improper for ALJs to rely on these factors in determining whether a claimant has a Substance Use Disorder in the first place. At this initial stage—evaluating whether a DAA materiality determination is necessary at all—ALJs must only rely on "objective medical evidence provided by an acceptable medical source." SSR 13-2p, 2013 WL 621536 at *10. But once ALJs actually undertake the DAA materiality determination and are evaluating the severity of the claimant's disorder

and whether it is material to the finding of disability, ALJs may properly weigh these other factors. *Id.* at 11.

Finally, Plaintiff argues that Dr. Griffin's testimony was contradicted by multiple other doctors' opinions. ECF No. 9 at 6. While true, it is the ALJ's responsibility to resolve conflicts in the medical testimony and as discussed *supra* at 15, the ALJ's finding that Plaintiff's depressive disorder and bipolar disorder would no longer remain if he stopped using drugs and alcohol is supported by substantial evidence.

For these reasons, the ALJ properly found that Plaintiff's substance abuse disorders were a contributing factor material to the determination of disability.

**B.    The ALJ did not Err in Weighing the Medical Opinion Evidence**

Plaintiff argues that the ALJ erred in evaluating and weighing the medical opinion evidence. ECF No. 9 at 7-16. Specifically, he argues the ALJ erred in weighing the medical opinions from four providers: (1) examining psychologist John Arnold, Ph.D.; (2) examining psychiatrist Beverley Allen, M.D.; (3) treating psychologist Dennis Dyck, Ph.D.; and (4) examining psychologist Kayleen Islam-Zwart, Ph.D. *Id.*

**1.    Legal standards**

The Social Security Act's implementing regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating

physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (non-examining physicians). *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001); *see* 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a non-examining physician's. *Holohan*, 246 F.3d at 1202. A non-examining physician's opinion cannot by itself justify the rejection of the opinion of either an examining physician or a treating physician. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995).

If a treating or examining doctor's opinion is contradicted by another doctor's opinion—as is the case here—an ALJ may only reject it by providing "specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ satisfies the "specific and legitimate" standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). In contrast, an ALJ fails to satisfy the standard when he or she "rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive,

or criticizing it with boilerplate language that fails to offer a substantive basis for his [or her] conclusion." *Id.* at 1012-13.

### 2. Examining psychologist John Arnold, Ph.D.

Dr. Arnold evaluated Plaintiff in September 2015. AR 936-40. He diagnosed Plaintiff with major depressive disorder and generalized anxiety disorder in partial remission. AR 937. Given Plaintiff's symptoms from these conditions, he opined that Plaintiff would have mostly moderate limitations in his ability to perform basic work activities, a few mild limitations, a few marked limitations, and one severe limitation (adapting to changes). AR 938. Finally, Dr. Arnold opined that Plaintiff's impairments were not primarily the result of substance use within the previous 60 days and that the impairments would persist following a period of sobriety. AR 939. Notably, he did not recommend a chemical dependency assessment or treatment. AR 939.

The ALJ assigned little weight to Dr. Arnold's assessment, reasoning that (1) it was unclear whether Plaintiff accurately reported his alcohol use during the evaluation so that it could be adequately considered, and (2) Dr. Arnold's opinions were inconsistent with his mental status examination findings, which were essentially normal. AR 30. However, the ALJ noted that despite these problems with Dr. Arnold's opinion, the residual functional capacity nevertheless accounted

for the limitations he identified—task complexity, concentration, and adapting to workplace changes. AR 30.

Plaintiff argues that he did not underreport his alcohol use during the evaluation and that the ALJ was wrong to discount Dr. Arnold's opinion on this basis. ECF No. 9 at 8-9. However, during the evaluation, Plaintiff told Dr. Arnold that he last consumed alcohol two months prior, and that over the last year he only drank two or three beers about three times per week. AR 936. But during his intake with Sunshine Terrace (an adult therapeutic community) in July 2015, he noted that within the past year he had spent "a lot of time" getting alcohol or drugs, using them, or feeling high or sick from them. AR 902. He further noted that he kept using them even though it was "causing [him] social problems, leading to fights, or getting [him] into trouble with other people." AR 902. Several weeks later, in late July, Sunshine Terrace gave Plaintiff a conditional 30-day eviction notice due to his "unwillingness to take a BA test" and his probable use of alcohol and/or marijuana. AR 949. In the afternoon on December 7, 2015, he had a fainting episode and Sunshine Terrace staff members measured his BAC, which was .05%. AR 941. Following this incident, Sunshine Terrace gave Plaintiff another conditional 30-day eviction notice "due to [his] consumption of alcohol and being intoxicated while in the facility." AR 948. In February 2016, Sunshine Terrace gave Plaintiff yet another conditional 30-day eviction notice due to his use of

alcohol. AR 947. He was ultimately discharged from Sunshine Terrace for his alcohol use in June 2016. AR 1064.

Plaintiff points to his .05% BAC on December 7, 2015 and argues that this was "a low level not considered legally intoxicated in most states . . . [and] is also seemingly consistent with [his] statement to Dr. Arnold that when he drinks, he has 2 to 3 beers." ECF No. 9 at 8-9. This argument, however, emphasizes one piece of evidence in isolation and ignores the totality of the evidence from around this time period, which is generally inconsistent with Plaintiff's statements to Dr. Arnold. Thus, Plaintiff has not established that the ALJ improperly discounted Dr. Arnold's opinion on this basis.

Plaintiff also argues that the ALJ discounted Dr. Arnold's opinion on the basis that the mental status examination revealed intact "intellectual functioning," and that this was improper because he suffers from an affective disorder, "not from intellectual dysfunction." ECF No. 9 at 9. However, the ALJ did not discount Dr. Arnold's opinion solely because it revealed normal intellectual functioning. *See* AR 30. Rather, the ALJ discounted it because it was generally inconsistent with Dr. Arnold's findings in *many* categories of the mental status examination—which include intellectual functioning, but also include appearance, speech, attitude and behavior, and 10 additional categories. AR 939-940. Plaintiff does not discuss or mention any of these additional categories. *See* ECF No. 9 at 9. Thus, Plaintiff has

also not established that the ALJ improperly discounted Dr. Arnold's opinion on this basis.

Finally, the ALJ noted that despite the problems with Dr. Arnold's opinion, the residual functional capacity nevertheless accounted for the limitations he identified, including task complexity, concentration, and adapting to workplace changes. AR 30. Plaintiff does not address this rationale at all. *See* ECF No. 9 at 8-9.

### 3. Examining psychiatrist Beverley Allen, M.D.

Dr. Allen evaluated Plaintiff in March 2016. AR 958-962. She diagnosed Plaintiff with major depressive disorder. AR 961. She opined that it was treatable but that his likelihood of recovery was low, given his poor responses to electroconvulsive therapy and anti-depressants. AR 961. With respect to work limitations, Dr. Allen opined that Plaintiff would have no difficulty performing detailed and complex tasks, accepting instructions from supervisors, interacting with coworkers or the public, or maintaining regular attendance. AR 961. However, she also opined that he "would have difficulty completing a normal workday/workweek" and also have difficulty dealing with workplace stress due to his symptoms. AR 962.

The ALJ assigned little weight to Dr. Allen's assessment, reasoning that (1) Plaintiff was likely still dealing with the effects of his relapse, which—according

to Dr. Griffin—can imitate depression, (2) Plaintiff "reported fairly good activities at this time, including searching for work," and (3) Dr. Allen's opinions were inconsistent with her mental status examination findings, which were essentially normal except for some issues with concentration, persistence, and pace. AR 31. However, the ALJ noted that despite these problems with Dr. Allen's opinion, the residual functional capacity nevertheless accounted for the limitations she identified. AR 31. The ALJ also noted that Plaintiff's poor responses to electroconvulsive therapy and anti-depressants supported his conclusion that Plaintiff's depression was a byproduct of his alcohol consumption. AR 30-31.

As an initial matter, the Court notes that Plaintiff only addresses the first two reasons the ALJ gave for discounting Dr. Allen's opinion. *See* ECF No. 9 at 9-11. Plaintiff does not address the third rationale—that Dr. Allen's opinions were inconsistent with her mental status examination findings—nor does he address that the ALJ accounted for Dr. Allen's limitations in the residual functional capacity. *See id.* By not addressing all the ALJ's rationales, Plaintiff has waived his challenge to the ALJ's consideration of Dr. Allen's opinion. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008); *Matthew S. v. Saul*, 4:18-CV-05115-RHW, ECF. No 16 at 12-15 (E.D. Wash. 2019).

Nevertheless, the Court will briefly address Plaintiff's arguments relating to the ALJ's first two rationales. With respect to the ALJ's first rationale—that

Plaintiff was likely still dealing with the effects of his relapse, which can imitate depression—Plaintiff argues that unlike Dr. Arnold, "Dr. Allen was aware of [his] recent alcohol use and . . . [had] full knowledge of the length of [his] sobriety." ECF No. 9 at 10. Even assuming this is true,[2] the ALJ did not discount Dr. Allen's opinion because she was unaware of Plaintiff's alcohol use. *See* AR 31. Rather, the ALJ simply believed that Dr. Griffin's explanation—that Plaintiff's depression was a byproduct of his alcoholism—was more plausible, particularly in light of Plaintiff's poor responses to electroconvulsive therapy and anti-depressants. *See* AR 31. It is the ALJ's province to weigh the persuasive value of the various medical opinions and absent some legal error—which Plaintiff fails to identify here—it is not the Court's role to reassess those determinations. *Thomas*, 278 F.3d at 954-59.

Plaintiff also argues that the ALJ erred in finding that the activities he reported to Dr. Allen were a basis for discounting her opinion. ECF No. 9 at 10. He contends that "looking for work or a desire to return to work does not mean that

---

[2] It is doubtful whether Plaintiff actually reported the extent of his alcohol use to Dr. Allen. He told her that he "last drank alcohol one week ago" and denied any substance abuse treatment. AR 959. However, Plaintiff had recently undergone inpatient alcohol treatment. *See* AR 954, 1112. Also, three days before Dr. Allen's evaluation, Plaintiff completed a chemical dependency assessment at Spokane Addiction Recovery Center. AR 954-55. During the assessment, he "reported that he did not want to do anything at home due to hangover." AR 954. He reported that he and his wife had recently divorced "partially due to his alcohol use." AR 954. He reported driving under the influence "numerous times" and noted that his tolerance had increased from "8 beers to 12 beers." AR 954. The evaluator diagnosed him with severe alcohol use disorder and recommended intensive outpatient treatment. AR 954.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 23

the goal is attainable or negate disability." *Id.* But looking for work was just one of many activities that Plaintiff reported to Dr. Allen. *See* AR 959 (Plaintiff describing to Dr. Allen how he would get up early, go to meetings, go to the cafeteria, take care of his personal hygiene, etc.). Accordingly, Plaintiff has not established that the ALJ improperly discounted Dr. Allen's opinion.

### 4. Treating psychologist Dennis Dyck, Ph.D.

Dr. Dyck saw Plaintiff twice in July 2016 and three times in April 2017. *See* AR 1112-1119. He diagnosed Plaintiff with major depression. AR 1113. He opined that because of Plaintiff's symptoms, his abilities to maintain regular attendance at work, complete a normal workday/workweek without interruption, and deal with workplace stress were all "extremely impaired." AR 1110. He indicated that Plaintiff suffered from alcohol abuse and problem drinking, but believed that Plaintiff's limitations would continue even if Plaintiff stopped drinking. AR 1111.

The ALJ discounted Dr. Dyck's opinions, reasoning that Dr. Dyck "did not seem to take into consideration his own acknowledgment that there was current substance abuse." AR 31. Although Dr. Dyck indicated that Plaintiff's depression would continue if he stopped drinking, the ALJ noted that Dr. Dyck failed to explain how he knew this or the basis for this opinion. AR 31; *see Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (ALJs need not accept unexplained opinions). Moreover, the ALJ noted that Dr. Dyck described Plaintiff's drinking as

a "problem" which suggested that his symptoms would improve if he stopped

drinking. AR 31. The ALJ also noted that Dr. Dyck only treated Plaintiff for a

short time, *see* 20 C.F.R. § 404.1527(c)(2)(i), and that Plaintiff's recent sobriety

and job search suggested that Plaintiff "believes he is not disabled." AR 32.

Finally, the ALJ again noted that despite these problems with Dr. Dyck's opinion,

the residual functional capacity nevertheless accounted for many of his concerns.

AR 32.

Although Plaintiff describes the substance of Dr. Dyck's findings and

opinions in detail, *see* ECF No. 9 at 11-12, he fails to address any of the ALJ's

reasons for discounting this opinion. *See id.* at 13. Plaintiff merely states that his

attempts to work are not a valid basis for rejecting credibility and then quotes SSR

13-2p. *Id.* By not addressing the ALJ's rationales, Plaintiff has waived his

challenge to the ALJ's consideration of Dr. Dyck's opinion. *See Carmickle*, 533 at

1161 n.2; *Matthew S.*, 4:18-CV-05115-RHW, ECF. No 16 at 12-15.

### 5.    Examining psychologist Kayleen Islam-Zwart, Ph.D.

Dr. Islam-Zwart evaluated Plaintiff in July 2017. AR 1187-1190. She

diagnosed Plaintiff with major depressive disorder in partial remission, generalized

anxiety disorder, and an unspecified personality disorder. AR 1190. She opined

that his symptoms were "such that he would likely have difficulty working in a

regular and sustained manner at this time and his prognosis for the future seems

guarded given the chronic nature of his condition." AR 1190. She believed that medication compliance, therapy, and vocational counseling "may help him transition back into employment." AT 1190. She indicated that Plaintiff had a history of binge drinking but was currently abstinent. AR 1195. She also indicated that drinking "likely exacerbates his problems," but that his work limitations still continued even when he stopped drinking. AR 1195.

The ALJ assigned little weight to Dr. Islam-Zwart's assessment, reasoning that (1) Plaintiff admitted to Dr. Islam-Zwart that he was still consuming alcohol, which she did not address at all, (2) Plaintiff "reported fairly good activities," (3) Dr. Islam-Zwart's opinions were inconsistent with her examination findings, which were unremarkable, and (4) Plaintiff testified that at the time of the hearing, he was clean, sober, stable, and had been looking for work. AR 31. The ALJ again noted that despite these problems with Dr. Islam-Zwart's opinion, the residual functional capacity nevertheless accounted for the limitations she identified. AR 31.

Again, Plaintiff only addresses the ALJ's first rationale, the fourth rationale, and the ALJ's assertion that the residual functional capacity accounted for Dr. Islam-Zwart's limitations.[3] *See* ECF No. 9 at 14. By not addressing all the ALJ's

---

[3] Plaintiff argues that the residual functional capacity did not account for Dr. Islam-Zwart's limitations because she found that Plaintiff would have marked limitations responding to criticism from supervisors. ECF No. 9 at 14; *see* AR 1192. However, the residual functional capacity accounted for this—it specified that Plaintiff could not handle confrontational supervision. *See* AR 27.

rationales, Plaintiff has waived his challenge to the ALJ's consideration of Dr. Islam-Zwart's opinion. *See Carmickle*, 533 at 1161 n.2; *Matthew S.*, 4:18-CV-05115-RHW, ECF. No 16 at 12-15.

### 6.    Argument that the ALJ relied solely on opinion of a non-examining physician

Lastly, Plaintiff argues that the ALJ erred by relying solely on the opinion of a non-examining physician—Dr. Griffin—to reject the opinion of a treating doctor and multiple examining doctors who all opined that his depression would persist even if he stopped drinking. ECF No. 9 at 16.

Plaintiff is correct that a non-examining physician's opinion cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician. *Lester*, 81 F.3d at 831. However, an ALJ only errs when he or she relies on a non-examining provider's opinion "with nothing more." *Id.* In other words, when the non-examining doctor's opinion is "'contradicted by *all other evidence* in the record.'" *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (emphasis in original) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir. 1989)).

In contrast, an ALJ may rely heavily on a non-examining medical expert's opinion when that opinion is supported by other evidence in the record. For example, an ALJ may reject a treating or examining doctor's opinion when the ALJ relies on a combination of the non-examining expert's opinion, corroborating

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 27

state agency medical consultants' opinions, the claimant's testimony, and other medical reports in the record. *See Andrews*, 53 F.3d 1042-43. This is particularly true when the non-examining medical expert testifies at the hearing and is subject to cross-examination, and also when the examining doctors' ability to diagnose the claimant accurately is compromised by substance abuse. *Id.*

That is what happened here. The ALJ relied heavily on the opinion of non-examining expert Dr. Griffin, who testified at the hearing and was subject to cross-examination. AR 28-30. However, like in *Andrews*, the ALJ also relied on the state agency medical consultants' corroborating opinions, Plaintiff's testimony, Plaintiff's function reports, and Plaintiff's other medical records. AR 28-32. In addition to Dr. Griffin's testimony, other medical records support the ALJ's conclusion that Plaintiff's depression was a byproduct of his alcohol abuse. *See* AR 954 (chemical dependency assessment indicating that Plaintiff experiences depressive symptoms "due to hangover"), 1012, 1021 (counseling records that indicate Plaintiff was evicted from multiple facilities due to alcohol-related incidents, causing him to become homeless and experience mental stress). Importantly, the ALJ outlined the periods in which Plaintiff abstained from substance abuse and observed how his mental symptoms improved. *See* AR 25-27.

Accordingly, Plaintiff's claim that the ALJ relied *solely* on the opinion of a non-examining provider fails.[4]

**C. The ALJ Properly Rejected Plaintiff's Subjective Complaints**

Plaintiff argues the ALJ erred by discounting the credibility of his testimony regarding his subjective symptoms. ECF No. 9 at 16-19. Specifically, he argues that the ALJ erred in discounting his credibility because he was looking for work and also because he was able to perform household chores and engage in leisure activities. *Id.*

ALJs engage in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, the ALJ can reject the claimant's testimony about the severity of his symptoms only by offering "specific, clear, and convincing reasons" for doing so. *Id.*

---

[4] Plaintiff also argues that the ALJ erred in relying on Dr. Griffin's opinion because it was based upon the findings from the physicians whose opinions the ALJ discounted. ECF No. 9 at 16 (citing *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007)). However, the record reveals that Dr. Griffin relied on medical records from many additional sources, including Plaintiff's treating psychiatrist Dr. Bot, Sacred Heart Medical Center, Sunshine Terrace, Frontier Behavioral Health, and Spokane Addiction Recovery Center. AR 359-363, 367-70.

In weighing a claimant's credibility, ALJs may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

The ALJ found that if Plaintiff stopped using alcohol and drugs, the medically determinable impairments could reasonably be expected to produce some degree of the symptoms he alleged. AR 28. However, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. AR 28-29.

The ALJ offered multiple clear and convincing reasons for discrediting Plaintiff's subjective complaint testimony. *See* AR 29. First, the ALJ discounted Plaintiff's subjective complaints because they were belied by his daily activities. AR 29. The ALJ noted that Plaintiff was generally able to engage in day-to-day activities—he did laundry, prepared meals, grocery shopped, went on picnics, did chores, bathed daily, managed his money, read the news, saw his children on weekends, and saw his mother. AR 29; *see* 395, 633, 959, 1189. He had a driver's

license and drove to the places he needed to be. AR 1189. He went into businesses

and asked if they were hiring, filled out job applications, and went to job

interviews. AR 379-381. He spent a "couple of hours" per day on the computer

searching for jobs and reading the news. AR 397.  He went to Alcoholics

Anonymous meetings and to church on Sundays. AR 388, 398. He had no

problems getting along with his family, friends, neighbors, or others. AR 634.

Activities inconsistent with the alleged symptoms are proper grounds for

questioning the credibility of subjective complaints. *Molina*, 674 F.3d at 1113; *see*

*also Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i).

Plaintiff argues that these daily activities are not necessarily reasons to doubt

his credibility because claimants are not required to be completely debilitated to

qualify for benefits. ECF No. 9 at 17-18. Plaintiff cites several Ninth Circuit cases

holding that a claimant's ability to perform some daily activities, such as grocery

shopping, cooking, watching television, driving, etc., does not necessarily detract

from his or her credibility. *Id.* (citing *Garrison*, 759 F.3d at 1016; *Fair v. Bowen*,

885 F.2d 597, 603 (9th Cir. 1989)).

Plaintiff is correct that ALJs must be cautious when concluding that daily

activities are inconsistent with pain testimony. *Garrison*, 759 F.3d at 1016.

However, if the claimant's level of activity is inconsistent with the limitations he

or she claims to have, this has a bearing on the claimant's credibility. *Id.*; *Reddick*

*v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). And here, Plaintiff testified that he had "a hard time functioning just in general" and struggles with "everyday tasks." AR 380-81. He testified that he had difficulty completing items on his to-do list, even just one or two per day. AR 393. He further testified that he had difficulty with focus and concentration to the point where he could not fill out a job application.[5] AR 395-96. Because Plaintiff's daily activities undermined his claims that he was unable to concentrate or prioritize tasks well enough to handle a simple position, this was a proper basis for discounting his credibility.

Next, the ALJ discounted Plaintiff's subjective complaints because his lack of ongoing employment was due to factors unrelated to his allegedly disabling impairments. AR 29. Plaintiff's last full-time job was as a senior human resources manager at Amazon in Seattle, where he worked until June 2013. AR 377, 624. His performance review noted that he had achieved his goals, but that he needed improvement on his leadership skills. AR 377. Around this time, Plaintiff's wife was offered a job in Spokane, so Plaintiff quit at Amazon and the family relocated. AR 377-78. When Plaintiff arrived in Spokane, he applied and interviewed for positions in the human resources field. AR 379. These applications were

---

[5] Plaintiff argues the ALJ erred to the extent he "failed to identify specific pieces of evidence which were inconsistent with any specific aspect of Plaintiff's testimony." ECF No. 9 at 18 (citing *Brown-Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 2015)). Although the ALJ did not individually analyze each piece of inconsistent testimony, he generally outlined the substance of Plaintiff's testimony that he found was "not fully consistent internally or with the record as discussed later." AR 28.

unsuccessful, so Plaintiff began applying for various other positions. AR 379-80.

During this time, he was a stay-at-home dad for his two children while his wife

worked. AR 382. He held a few different part-time jobs—including as a

construction worker, as a janitor, and sorting books at Goodwill—while he

continued applying for full-time positions. AR 1189. The day before the hearing,

for example, Plaintiff applied to be a hardware store salesperson and a grocery

store cashier. AR 380-81. Lack of ongoing employment due to factors unrelated to

one's allegedly disabling impairments is a sufficient basis to discredit subjective

pain testimony. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).

Plaintiff argues that a claimant looking for or wanting to return to work is

not a sufficient reason to discredit his or her symptom reports. ECF No. 9 at 17.

This is not a categorical rule, but can be true in some circumstances. *See*

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007) (claimant's failed

attempt to work through his symptoms—*after* the time period for which he was

claiming disability—was insufficient to discredit his testimony). In this case,

however, Plaintiff continually sought full-time employment after he voluntarily left

Amazon—while also working part-time in various positions—but his search was

unsuccessful for reasons unrelated to his mental impairments. AR 377-380. The

record does not support his assertion that he was simply trying to work in spite of

his symptoms, but rather suggests that his symptoms were not as severe as alleged.

When the ALJ presents a reasonable interpretation that is supported by substantial evidence, it is not the Court's role to second-guess it. For the reasons discussed above, the ALJ did not err when discounting Plaintiff's subjective complaint testimony because the ALJ provided multiple clear and convincing reasons for doing so.

**D.     ALJ's Step Five Finding**

Plaintiff argues that the ALJ improperly found that there were a significant number of jobs in the national economy that he could still perform. ECF No. 9 at 19-20. He first argues that one of the jobs the ALJ found that he could still do—mail clerk—has a GED Reasoning Level of 3 and is therefore eliminated for someone like himself who can only perform simple, routine, repetitive tasks. *Id.* (citing *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015)). Even assuming this was error, the ALJ identified two other jobs that Plaintiff could perform (cleaner and laborer) and therefore any error was harmless. *Shaibi v. Berryhill*, 883 F.3d 1102, 1110 n.7 (9th Cir. 2017).

Finally, Plaintiff argues that the ALJ's hypothetical questions for the vocational expert did not account for all of his limitations. ECF No. 9 at 20.

However, the hypothetical the ALJ posed to the vocational expert was consistent with the ALJ's findings relating to Plaintiff's residual functional capacity. *Compare* AR 27 *with* AR 403. The ALJ included all of Plaintiff's

limitations, and the only omitted limitations were those that the ALJ found did not exist. Plaintiff's argument here essentially just restates his prior arguments that the residual functional capacity did not account for all his limitations. Courts routinely reject this argument. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008); *Rollins*, 261 F.3d at 857. Because the ALJ included all of the limitations that he found to exist, and because his findings are supported by substantial evidence, the ALJ did not err in omitting the other limitations that Plaintiff claims, but failed to prove. *See Rollins*, 261 F.3d at 857. Accordingly, the ALJ properly identified available jobs in the national economy that matched Plaintiff's abilities and therefore satisfied step five of the sequential evaluation process.

## VIII. Order

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, **IT IS ORDERED:**

1.  Plaintiff's Motion for Summary Judgment, **ECF No. 9**, is **DENIED.**

2.  Defendant's Motion for Summary Judgment, **ECF No. 10**, is **GRANTED.**

///

///

///

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 35**

3. Judgment shall be entered in favor of Defendant and the file shall be **CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel, and close the file.

**DATED** this 3rd day of February, 2020.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge